UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| M&C SAATCHI PR LLP, | |
|---|---|
| Plaintiff, | |
| -v.- | 16 Civ. 8866 (KPF) |
| BEER FROST, INC., STEPHEN GIORDANO, and BEL DONO, INC., | **OPINION AND ORDER** |
| Defendants. | |

KATHERINE POLK FAILLA, District Judge[1]:

      Plaintiff M&C Saatchi PR LLP brought suit against Beer Frost, Inc. ("Beer Frost"), Stephen Giordano, and Bel Dono, Inc. ("Bel Dono") (collectively, "Defendants"), asserting claims arising out of a disputed contractual relationship among the parties. As relevant to the instant motion, Plaintiff alleges that Giordano executed a December 2015 contract for public relations services (the "Agreement"), individually and/or on behalf of Bel Dono, as the authorized agent for Beer Frost. Plaintiff further claims that it has not been paid for these services, despite Defendants' multiple representations that payment would be made. Beer Frost has moved to dismiss, claiming that Plaintiff failed to plead that an agreement with Beer Frost was ever formed. For the reasons set forth in the remainder of this Opinion, the Court agrees with Beer Frost that the pleadings are inadequate and grants the motion.

---

[1] Anna (Yongyi) Gu, a rising second-year student at Cornell Law School and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

## BACKGROUND[2]

### A. Factual Background

#### 1. The Parties

Plaintiff is a Delaware limited liability partnership with its principal place of business at 625 Broadway, New York, New York. (Am. Compl. ¶ 1). Defendant Beer Frost is a Florida corporation with its principal place of business at 6416 Parkland Drive, Sarasota, Florida. (*Id.* at ¶ 2). Defendant Stephen Giordano is a resident of Palm Harbor, Florida. (*Id.* at ¶ 3). Defendant Bel Dono, Inc. ("Bel Dono") is a Florida corporation with its principal place of business at 3001 North Rocky Point Drive East, Tampa, Florida. (*Id.* at ¶ 4).

#### 2. The Agreement

On or about December 9, 2015, Plaintiff entered into an agreement — ostensibly with Beer Frost, Giordano, and Bel Dono — to provide certain public relations services to Defendants from December 8, 2015, through December 31, 2016. (Am. Compl. ¶ 9; *see also id.*, Ex. A (signed version of the Agreement)). The Agreement specified that Plaintiff would provide marketing and brand development services related to a product originally known as "Beer-

---

[2] The Court draws the facts in this section from the Amended Complaint ("Am. Compl." (Dkt. #57)), the well-pleaded allegations of which are taken as true for purposes of this motion, as well as several exhibits that Plaintiff attached to the Amended Complaint. The Court declines to consider certain other documents submitted by Plaintiff in opposition to the instant motion, as discussed more fully below.

For convenience, the Court refers to Defendants' Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint as "Def. Br." (Dkt. #97), Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #105), and Defendants' Reply Memorandum of Law as "Def. Reply" (Dkt. #107). The Court also refers to the Affirmation of F. Mathew Jackson in Opposition to the Motion to Dismiss the Amended Complaint as "Jackson Aff." (Dkt. #106).

Frost" and later now as "Ice-Frost," a product that lowers the temperature of a cooler from 30 degrees to minus 10 degrees when added to ice. (Am. Compl. ¶ 12; Agreement).

The Agreement provides for the authorized signatures of Laura Hall, Plaintiff's managing director, and David Chism, whose title is listed as CEO of BeerFrost.com. (Am. Compl. ¶ 12). While Chism's name is provided on the signature line, Plaintiff alleges that Defendant Giordano was the individual who signed the Agreement as an authorized agent for, or with the actual or implied consent of, Beer Frost. (*Id.* at ¶ 10).[3]

### 3. Plaintiff's Services

Plaintiff states that after the execution of the Agreement, it sent representatives to Florida to meet with Defendants, learn about the product, and understand Defendants' expectations regarding performance. (Am. Compl. ¶ 11). Plaintiff performed services for Defendants on an expedited basis and delivered invoices for payments. (*Id.* at ¶ 12). Plaintiff contends that it incurred costs and expenses in performing the services pursuant to the Agreement, including expenses "associated with engaging third parties to perform work in connection with the services," and "internal costs and expenses" associated with the Agreement. (*Id.* at ¶¶ 13, 31, 32). Plaintiff states that, though Defendants repeatedly suggested that payments would be made, payments were never received. (*Id.* at ¶ 17, 19).

---

[3] All parties agree that it is Giordano's signature on the Agreement. (See Dkt. #14 (Transcript of March 7, 2018 Hearing) at 5:23-6:2, 13:14-16, 15:2-5).

3

On December 10, 2015, Plaintiff delivered invoices to Defendants seeking payment of $287,500, plus $647,500 in expenses incurred pursuant to the Agreement. (Am. Compl., Ex. B (M&C Saatchi Invoice dated December 10, 2015 (the "Invoice"))). Then, on September 13, 2016, Plaintiff delivered a Demand for Payment to Defendants, demanding payment of the balance due pursuant to the Agreement. (*Id.* at ¶ 33; *see also id.* at Ex. C (M&C Saatchi Demand Letter dated September 13, 2016 (the "Demand Letter")). Defendants have refused to make any payments to Plaintiff for the services provided. (*Id.* at ¶ 34).

**B.   Procedural History**

Plaintiff initiated suit in this District on November 16, 2016. (Dkt. #1). On December 22, 2016, Giordano filed his answer *pro se*. (Dkt. #15). On March 8, 2017, Beer Frost filed an answer, and asserted counterclaims against Plaintiff and cross-claims against Giordano. (Dkt. #24). On March 21, 2017, Plaintiff filed an answer to Beer Frost's counterclaim. (Dkt. #28). On April 26, 2017, Giordano filed his answer to Beer Frost's cross-claim and asserted cross-claims against Beer Frost (Dkt. #32), and on May 15, 2017, Beer Frost answered Giordano's cross-claims (Dkt. #34). On March 6, 2018, the Court held a status conference, and on March 7, 2018, the Court granted leave for all parties to amend their pleadings. (Dkt. #42). Accordingly, Plaintiff filed the Amended Complaint on April 16, 2018. (Dkt. #57).

On May 8, 2018, Giordano filed an answer to the Amended Complaint (Dkt. #69), and on May 18, 2018, Beer Frost filed a letter motion seeking leave

4

to file a motion to dismiss (Dkt. #70). On July 19, 2018, Giordano filed a motion for judgment on the pleadings (Dkt. #83), which motion was denied by the Court on November 9, 2018 (Dkt. #113).

On August 13, 2018, the Court issued a briefing schedule for Beer Frost's proposed motion to dismiss. (Dkt. #90). Pursuant to that schedule, Beer Frost filed its motion papers on September 14, 2018, arguing that the Court should dismiss all of Plaintiff's causes of action against it. (Dkt. #97-99). Plaintiff filed an opposition brief and an affirmation in support of this opposition brief on October 12, 2018, withdrawing all causes of actions against Beer Frost, except the first claim, for breach of contract. (Dkt. #105-106). Beer Frost filed its reply on October 29, 2018. (Dkt. #107). The Court now considers the motion to dismiss the sole remaining claim against Beer Frost.

## DISCUSSION

**A. Motions to Dismiss Under Rule 12(b)(6)**

**1. Legal Standard**

When considering a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v.

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* [4]

### 2. The Court's Consideration of Documents External to the Complaint

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies

---

[4] Plaintiff asks the Court to deny Beer Frost's motion in the event it is converted to a motion for summary judgment. (Pl. Opp. 9-10). The Court sees no reason to convert Beer Frost's motion to dismiss into one for summary judgment, and Beer Frost has not asked the Court to do so. (Def. Reply 9-10).

heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "To be integral to a complaint, the plaintiff must have [i] 'actual notice' of the extraneous information and [ii] 'relied upon the documents in framing the complaint.'" *DeLuca* v. *AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Chambers,* 282 F.3d at 153).

"Merely mentioning a document in the complaint will not satisfy this standard," and the exception often applies where "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason — usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim — was not attached to the complaint." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). Moreover, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity [, relevance,] or accuracy of the document." *DiFolco,* 622 F.3d at 111 (quoting *Faulkner* v. *Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

Plaintiff has submitted several documents along with its opposition brief. (Jackson Aff., Ex. A-F). These documents include the following exhibits: (i) an email dated August 31, 2015, prior to the signing of the Agreement; (ii) an email dated December 29, 2015, scheduling a phone call; (iii) an email dated

7

January 7, 2016, regarding Beer Frost's approval of a logo; (iv) an email from Plaintiff to Beer Frost announcing that they are trending online; (v) an email from Plaintiff requesting payment from Beer Frost; and (vi) an internal email between Plaintiff's employees.  (*See id.*).

The Court declines to consider these documents.  Plaintiff's sole statement as to how and why the Court should consider these documents, which were not attached to the Amended Complaint, is: "The exhibits to the Jackson Aff. are material and integral to Plaintiff's Amended Complaint." (Pl. Opp. 6-7).  The Court does not agree.  These exhibits were neither attached to the Amended Complaint nor referenced therein.  To be sure, Plaintiff asserted in the Amended Complaint that "Defendants … engag[ed] in ongoing and extensive consultation with M&C[.]"  (Am. Compl. ¶ 18).  However, Plaintiff provided no dates, names, or content for any communication between Beer Frost and Plaintiff.  The Court does not consider an allegation of "consultation" sufficient to find unreferenced email communications, many of which are from Plaintiff, to be integral to the Amended Complaint.  *See DeLuca*, 695 F. Supp. 2d at 61 ("Because the … Affidavit and Exhibits were submitted in response to issues raised in [a] motion to dismiss … the complaint does not mention, let alone rely heavily upon, these extrinsic documents.").[5]

---

[5] Plaintiff does not seek leave to amend in its opposition.  However, to the extent Plaintiff seeks to amend by opposition, the Court rejects this attempt.  The Court has already informed Plaintiff and Defendants that further amendment would not be allowed given the history of the case.  (*See* Dkt. #78 (Transcript of June 4, 2018 Hearing) at 11:22-12:9, 13:7-19).

### B. Plaintiff Fails to State a Breach of Contract Claim, as It Fails to Allege That a Contract Existed Between Plaintiff and Beer Frost

"A valid contract under New York law requires the familiar elements of offer, acceptance, consideration, mutual assent, and an intent to be bound." *Stone* v. *Sutton View Capital, LLC*, No. 17 Civ. 1574 (VEC), 2017 WL 6311692, at *4 n.7 (S.D.N.Y. Dec. 8, 2017) (citing *Register.com, Inc.* v. *Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)); *see generally Am. Comm. for Weizmann Inst. of Sci.* v. *Dunn*, 10 N.Y.3d 82, 93 (2008).[6] Plaintiff contends that its breach of contract claim is sufficient, because (i) Plaintiff entered into an Agreement with Beer Frost, Giordano, and/or Bel Dono that entitled Plaintiff to $1,053,270.57; (ii) Giordano executed the Agreement as an authorized agent for, or with the actual or implied consent of, Beer Frost; (iii) the Agreement was ratified by the parties' respective conduct notwithstanding Beer Frost's claim that Giordano did not have actual or apparent authority to execute the Contract. (Am. Compl. ¶¶ 9-10, 18, 33).

In contrast, Defendant Beer Frost contends that the Agreement between Beer Frost and Plaintiff lacks acceptance, mutual assent, and the intent to be bound. (Def. Br. 4). More specifically, Beer Frost makes the following claims for dismissal. *First*, Giordano had no actual or apparent authority to execute the Agreement on its behalf. (*Id.* at 6-8). *Second*, the Amended Complaint fails

---

[6] A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *See In re Gawker Media LLC*, 571 B.R. 612, 626 (Bankr. S.D.N.Y. 2017) (quoting *Liberty Synergistics Inc.* v. *Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013)). Because both parties' briefing relies on New York law and neither party disputes its applicability, the Court shall apply New York law. *Celle* v. *Filipino Reporter Enters. Inc.*, 209 F.3d 163, 175 (2d Cir. 2000) ("Since no party has challenged the choice of New York [] law, all are deemed to have consented to its application.").

to allege plausible facts to allow the Court to infer that Beer Frost ratified the Agreement. (Def. Reply 4-8). *Third*, Plaintiff's breach of contract claim is barred by the Statute of Frauds to the extent it rests upon an oral agreement. (Def. Br. 8-9). The Court addresses each of these arguments in turn.

### a. Plaintiff Fails to Plead the Existence of an Agency Relationship Between Giordano and Beer Frost

To review, Plaintiff alleges in the Amended Complaint that Giordano entered into the Agreement while acting as Beer Frost's agent, thereby binding Beer Frost to its terms. (Am. Compl. ¶ 10). Under New York agency law, "an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." *N.Y. Marine & Gen. Ins. Co.* v. *Tradeline, L.L.C.*, 266 F.3d 112, 122 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also Wen Kroy Realty Co.* v. *Pub. Nat. Bank & Tr. Co. of New York*, 260 N.Y. 84, 88 (1932). The authority to act for a principal may be actual or apparent. *Meisel* v. *Grunberg*, 651 F. Supp. 2d 98, 110 (S.D.N.Y. 2009); *Greene* v. *Hellman*, 51 N.Y.2d 197, 204 (1980). The Court finds that Plaintiff has failed to plead adequately the existence of an agency relationship between Giordano and Beer Frost.

#### i. Actual Authority Has Not Been Alleged

"[Actual] authority may be express or implied, but in either case, it exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." *Minskoff* v. *Am. Express Travel Related Servs. Co.*, 98 F.3d 703,

708 (2d Cir. 1996) (citation omitted)). The existence of actual authority "depends on the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship." *Cromer Finance Ltd.* v. *Berger*, 245 F. Supp. 2d 552, 560 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).

Plaintiff fails to allege plausible facts to allow the Court to infer that Beer Frost delegated actual authority to Giordano and consented to the execution of the Agreement. The sole allegation regarding an agency relationship between Giordano and Beer Frost in the Amended Complaint is the following: "Defendant Giordano executed the Agreement ... as an authorized agent for, or with the actual or implied consent of, Beer Frost." (Am. Compl. ¶ 10). Significantly, however, Plaintiff provides no facts that would support a finding that Beer Frost delegated authority to negotiate with Plaintiff on its behalf.

In opposition, Plaintiff argues that whether Giordano has authority constitutes a disputed fact which, when interpreted in the light most favorable to Plaintiff, gives rise to a plausible claim. (*See* Pl. Opp. 5). However, the mere conclusory assertion of a legal conclusion does not sustain a plausible claim. *See Iqbal*, 556 U.S. at 678. Later on in its submission, Plaintiff states: "Giordano has represented that Beer Frost authorized him to sign the Contract on Beer Frost's behalf." (*Id.* at 6). This statement is unsourced and does not appear in the Amended Complaint.[7] Plaintiff cannot merely assert that actual

---

7 Beer Frost suggests that this assertion is the result of statements by Giordano during Court proceedings. (*See* Def. Reply 3). The Court agrees with Beer Frost that an unsupported assertion by Plaintiff in its opposition papers is not properly considered.

11

authority existed and claim that this legal conclusion must be accepted as true. Absent any allegations to support such a conclusion, the Court finds that Plaintiff has failed to allege that Giordano had actual authority to bind Beer Frost. The Court thus turns to the question of apparent authority

### ii. Apparent Authority Has Not Been Alleged

In contrast to actual authority, "[a]pparent authority originates from 'written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have an act done on his behalf by the person purporting to act for him.'" *Mun. Corp. of Bremanger* v. *Citigroup Global Markets Inc.*, 555 F. App'x 85, 88 (2d Cir. 2014) (summary order) (quoting *Minskoff*, 98 F.3d at 708). Apparent authority, unlike actual authority, turns on how the actions of principal and agent are perceived by third parties, rather than the actual relationship between principal and agent.

> As with implied actual authority, apparent authority is dependent on verbal or other acts by a principal which reasonably give an appearance of authority to conduct the transaction, except that, in the case of implied actual authority, these must be brought home to the agent while, in the apparent authority situation, it is the third party who must be aware of them.

*See Greene*, 51 N.Y.2d at 204 (citations omitted).

---

Even were the Court to consider such a statement, the Court does not believe a statement in Court proceedings years after the fact would demonstrate the existence of an agency relationship or justify a belief that an agency relationship existed at the time of the alleged formation of the contract.

12

On this point as well, Plaintiff fails to allege plausible facts to allow the Court to infer that Giordano had apparent authority to execute the Agreement on Beer Frost's behalf. As discussed above, Plaintiff's sole statement of fact in support of finding an agency relationship is the uncited assertion that: "Giordano has represented that Beer Frost authorized him to sign the Contract on Beer Frost's behalf." (Pl. Opp. 6). However, the Amended Complaint fails to allege a single fact that would suggest to Plaintiff that Beer Frost provided authority to Giordano to enter into any agreements on Beer Frost's behalf at the time of the alleged formation. Plaintiff has provided no examples of observed communications between Giordano and Beer Frost from which Plaintiff could have inferred the existence of such a relationship. And precisely because apparent authority requires some action by the principal that would lead an observer to conclude an agency relationship existed, Plaintiff's failure to plead such actions by Beer Frost forecloses any claim that Giordano held apparent authority.

In short, the Court finds that Plaintiff has failed to plead that Giordano had authority to enter into an agreement on Beer Frost's behalf, and, therefore, Giordano's execution of the Agreement cannot sustain a claim of breach of contract against Beer Frost.

### b. Plaintiff Fails to Plead the Existence of Any Relationship Between BeerFrost.com and M&C

As noted above, the Agreement provides for the signature of David Chism, CEO of BeerFrost.com, and not Stephen Giordano or Beer Frost. (Agreement). Plaintiff does not argue (and the Court has no basis to conclude

13

independently) that BeerFrost.com and Beer Frost are the same entity, or that Giordano had a relationship with BeerFrost.com that would bind Beer Frost. From this reticence, Beer Frost argues that it cannot be bound by the actions of BeerFrost.com. (*See* Def. Reply 4).

Plaintiff does not allege in the Amended Complaint, nor does it argue in its opposition, that BeerFrost.com had authority to bind Beer Frost. Accordingly, the Court agrees with Beer Frost: "Plaintiff has failed to plead that Beerfrost.com was a d/b/a or facts as to how Beer Frost Inc. was a contracting party to the Alleged Agreement, or how Giordano was related to either Beer Frost Inc., or Beerfrost.com or could bind either." (Def. Reply 4). Plaintiff has failed to plead adequately that Giordano was an agent of Beer Frost, and any current claims regarding a relationship between and among Giordano, BeerFrost.com, and Beer Frost are foreclosed by their absence from the Amended Complaint. The Court concludes that Plaintiff has failed to plead a contract between Plaintiff and Beer Frost.

### c. Plaintiff Fails to Plead Ratification of the Agreement

Plaintiff argues that even if formation were insufficiently pleaded, the Amended Complaint still states a claim for breach of contract against Beer Frost under a theory of ratification of the Agreement. "'Ratification' results when a party to a voidable contract accepts benefits flowing from the contract, or remains silent, or acquiesces in the contract for any considerable length of time after he has opportunity to annul or void the contract." *Prudential Ins. Co. of Am.* v. *BMC Indus., Inc.,* 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986) (citation

14

omitted)). Ratification is a "retroactive activity" where, "in the absence of actual or apparent authority," a principal may be liable if it ratifies an act done by a purported agent and may be implied if a principal retains the benefit of such a "transaction with knowledge of the material facts[.]" *See Precedo Capital Grp. Inc.* v. *Twitter Inc.*, 33 F. Supp. 3d 245, 254 (S.D.N.Y. 2014) (quoting *Dover Ltd.* v. *A.B. Watley, Inc.*, 423 F.Supp.2d 303, 318 (S.D.N.Y. 2006)).

The Court rejects Plaintiff's ratification argument. In ostensible support, Plaintiff points to the allegations in the Amended Complaint that (i) Defendants engaged in "ongoing and extensive consultation with [Plaintiff] regarding the services and [made] continuing representations that payment to [Plaintiff] was forthcoming" and (ii) Defendants "acknowledged that payment was due to Plaintiff for the services." (Pl. Opp. 6 (citing Am. Compl. ¶¶ 19-20)). However, Beer Frost notes that neither of these allegations distinguishes among the respective Defendants. (Def. Reply 5). These broad assertions of collective ratification in the Amended Complaint are thus plainly insufficient to suggest that Beer Frost specifically had "full knowledge of the material facts relating to the transaction." *See Vista Outdoor Inc.* v. *Reeves Family Tr.*, 234 F. Supp. 3d 558, 569 (S.D.N.Y. 2017), *aff'd*, 725 F. App'x 17 (2d Cir. 2018) (summary order) (citing *Chemical Bank* v. *Affiliated FM Ins. Co.*, 169 F.3d 121, 128 (2d Cir. 1999)). Indeed, the Amended Complaint fails to allege that Beer Frost, specifically, undertook any action that would make Plaintiff believe that Beer Frost had any knowledge of the material facts of the transaction. Except for the conclusory statements, the Amended Complaint does not suggest that Beer

15

Frost made any representation regarding the contract or acknowledged its material terms.[8]

### 2. To the Extent Plaintiff Claims an Oral Contract Existed Between Beer Frost and M&C, Such a Claim Would Be Barred by the Statute of Frauds

Beer Frost argues that because the Agreement provided in the Amended Complaint cannot bind Beer Frost, any allegations regarding a separate, oral agreement against Beer Frost are barred by the Statute of Frauds. (*See* Def. Br. 8-9). Plaintiff makes two arguments in response. *First*, the Agreement was a written, not an oral, contract, and *second*, email communications between the parties demonstrate the existence of a contractual relationship. (*See* Pl. Opp. 7-8). The Court considers and rejects each argument in turn.

#### a. No Written Agreement Exists Between Plaintiff and Beer Frost

A viable claim for breach of contract requires an enforceable agreement. *See Roberts* v. *Karimi*, 251 F.3d 404, 407 (2d Cir. 2001); *Mercator Corp.* v. *Windhorst*, 159 F. Supp. 3d 463, 469 (S.D.N.Y. 2016). The New York Statute of Frauds renders void any oral agreement that "[b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime." N.Y. Gen. Oblig. Law

---

[8] As discussed above, the Court does not find that the exhibits in the Jackson Affirmation are properly considered. However, the Court does not believe these documents contain any indication of ratification. Exhibits A predates the Agreement. (Jackson Aff., Ex A). Exhibit B involves the setting up of a phone call. (*Id.* at Ex. B). While Exhibit C does suggest that someone at Beer Frost worked with someone at M&C on logo design and approval, the email does not reference the Agreement, its terms, or any payment owed pursuant to the Agreement. (*Id.* at Ex. C). Exhibits D, E, and F are emails from Plaintiff, rather than Beer Frost. (*Id.* at Ex. D-F). None of them identifies or describes the Agreement or its terms.

§ 5-701(a)(1). In other words, if an agreement is incapable of full performance within a year, it must be in writing to be enforceable. *See Guilbert* v. *Gardner*, 480 F.3d 140, 151 (2d Cir. 2007). A motion to dismiss may be granted if, drawing all reasonable inferences in favor of the non-moving party, the moving party "has a valid Statute of Frauds defense to [the] claims." *Messner Vetere Berger McNamee Scmetterer EURO RSCG Inc.* v. *Aegis Group PLC*, 974 F. Supp. 270, 273 (S.D.N.Y. 1997); *see also Zeisling* v. *Kelly*, 152 F. Supp. 2d 335, 343 (S.D.N.Y. 2001) (explaining the policy rationale for granting motions to dismiss when the moving party has a Statute of Frauds defense).

The parties do not dispute the length of the Agreement, which by its terms contemplates performance lasting more than one year, from December 8, 2015, through December 31, 2016. (*See* Agreement). Plaintiff argues that the Statute of Frauds does not apply here because there "was a written contract negotiated by parties." (Pl. Opp. 7). However, the Court has held that the Agreement, executed by Plaintiff and Giordano, was not binding on Beer Frost. And because Plaintiff has failed to plead adequately that a written agreement existed between Beer Frost and M&C, any oral agreement that reflected similar terms would be barred by the Statute of Frauds.

### b. No Electronic Communications Overcome the Absence of a Written Agreement

In certain circumstances, email communications between the parties to an agreement can serve as a writing that will satisfy the statute of frauds. N.Y. Gen. Oblig. Law § 5-701(b)(3)(a). However, "[i]t is hornbook law that [a confirmatory writing], in order to satisfy the statute, 'must state the entire

contract with reasonable definition and certainty, so that the substance thereof will appear from the writing without any resort to parol evidence.'" *Dorman* v. *Cohen*, 413 N.Y.S.2d 377, 378-79 (1st Dep't 1979) (citing *Kobre* v. *Instrument Systems Corporation*, 387 N.Y.S.2d 617, 618 (1st Dep't 1976)).

Plaintiff argues that even if no written contract exists, the emails attached to the Jackson Affirmation are evidence of an agreement to provide services. (Pl. Opp. 7). The Court has already determined that the Jackson Affirmation exhibits cannot be considered. However, even were the Court to consider these documents, they do not describe the existence of a contract. The Court agrees with Beer Frost that "none of the[ ] [emails] identify and/or describe the Alleged Agreement or its terms." (Def. Reply 9). It therefore finds that any allegation that an oral agreement existed between Beer Frost and M&C would be barred by the Statute of Frauds. In sum, because no contract between Beer Frost and Plaintiff has been sufficiently alleged, Plaintiff's claim for breach of contract against Beer Frost must be dismissed.

## CONCLUSION

For the foregoing reasons, the Amended Complaint is DISMISSED WITH PREJUDICE as to Defendant Beer Frost. The remaining parties are hereby ORDERED to provide a joint letter regarding the status of outstanding discovery and all remaining claims on or before July 19, 2019. The Court expects that any schedules proposed by the parties, such as schedules for the completion of discovery or for motion practice, will take into account the

18

medical issues raised by Defendant Giordano in his letter to the Court of June 18, 2019. (Dkt. #114).

The Clerk of Court is directed to terminate the motion at docket entry 97

SO ORDERED.

Dated: June 28, 2019
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge